Personnel Commission
No. 82-452

## APPEAL OF HILDEGARD TAMM
### (New Hampshire Personnel Commission)

October 26, 1983

*Bruce E. Friedman,* Franklin Pierce Law Center Family and Housing Law Clinic, of Concord, by brief and orally, for the plaintiff.

*Gregory H. Smith,* attorney general (*Peter C. Scott,* assistant attorney general, on the brief and orally), for the State.

KING, C.J. In this case, we are concerned with the alleged wrongful termination of the employment of a State employee during her six-month probation period. We are treating this appeal as a petition for a writ of certiorari, RSA 490:4 (Supp. 1979), by which the plaintiff seeks review of a ruling by the New Hampshire Personnel Commission (commission) which upheld the decision of the New Hampshire Public Utilities Commission (PUC) dismissing the plaintiff from her employment. We reverse and remand.

The plaintiff, Hildegard Tamm, is a former PUC employee who in August 1981 was dismissed during her probationary period, which is defined as a six-month work-test period prior to permanent employment. N.H. ADMIN. CODE § Per 302.23(a). The plaintiff sought a hearing before the commission to overturn her dismissal, alleging that she was terminated from her employment for being "overqualified." At the first hearing, the commission, without reaching the merits, dismissed the case on the ground that the plaintiff was not entitled to a hearing because she was a probationary employee.

The plaintiff appealed to this court. We ruled that despite the plaintiff's probationary status, the commission was the appropriate agency to consider the merits of the plaintiff's claim. We remanded the case to the commission to allow the plaintiff the opportunity to

prove her claim that her dismissal was "arbitrary, illegal, capricious or made in bad faith." *Appeal of Tamm*, 122 N.H. 646, 647, 448 A.2d 1373 (1982) (citation omitted).

On August 27, 1982, the commission conducted a second hearing. At the hearing, the PUC introduced testimony of Bruce B. Ellsworth, who was the plaintiff's direct supervisor throughout the term of her probationary employment. In response to Mr. Ellsworth's testimony, the plaintiff submitted requested findings of fact, most of which were granted by the commission. The findings indicated that she had satisfactorily performed the duties of her position during the probationary period.

At the August hearing, the commission affirmed the decision of the PUC to dismiss the plaintiff. The commission concluded that "[n]o evidence of bad faith was introduced," and that the PUC's action was "not arbitrary, illegal or capricious in that it was based on valid considerations which are in the record." The commission subsequently denied a motion for reconsideration.

■ Certiorari is an extraordinary remedy, which is not granted as a matter of right but rather only when the court deems that "the substantial ends of justice require such relief." *Melton v. Personnel Comm'n*, 119 N.H. 272, 277, 401 A.2d 1060, 1063 (1979) (quoting *State v. N.H. Retail Grocers Ass'n, Inc.*, 115 N.H. 623, 625, 348 A.2d 360, 362 (1975)). Nevertheless, this court has not hesitated in certiorari proceedings to confer relief to parties injured by wrongful administrative action. *Wood v. General Elec. Co.*, 119 N.H. 285, 289, 402 A.2d 155, 158 (1979).

■ While the plaintiff seeks review of the order of the commission under RSA 541:6, the right to appeal under that statute extends only to "permanent" employees by virtue of RSA 98:15. *Melton v. Personnel Comm'n, supra* at 275, 401 A.2d at 1062; *see also* RSA 98:15. Where, as here, the plaintiff has mistakenly attempted to appeal under RSA 541:6 rather than to proceed by petition for certiorari, we have held that "'[a]lthough the plaintiffs have mistaken their remedy, our practice permits consideration of their petition as one for writ of certiorari.'" *Melton v. Personnel Comm'n, supra* at 276, 401 A.2d at 1062 (quoting *Winn v. Jordan*, 101 N.H. 65, 67, 133 A.2d 485, 487 (1957)). Accordingly, the plaintiff's petition for appeal under RSA 541:6 will be treated as a petition for a writ of certiorari. *See Appeal of Tamm*, 122 N.H. at 647, 448 A.2d at 1373.

■ The scope of review on a petition for a writ of certiorari is confined to a determination whether the commission "acted illegally in respect to jurisdiction, authority or observance of the law, thereby

arriving at a conclusion which could not be legally or reasonably made." *George v. N.H. Dep't of Educ.*, 122 N.H. 434, 435, 445 A.2d 1131, 1132 (1982) (quoting *Tasker v. N.H. Personnel Comm'n*, 115 N.H. 204, 206, 338 A.2d 543, 544 (1975)).

■■ The discretionary authority of the commission has sharply defined limits. The dismissal of a probationary employee "must not be arbitrary, illegal, capricious or made in bad faith." *Appeal of Czeslaw Pawlus*, 121 N.H. 273, 274, 428 A.2d 487, 488 (1981) (quoting *Clark v. Manchester*, 113 N.H. at 275, 305 A.2d at 672); *see also* N.H. ADMIN. CODE § Per 302.23(c). The Code of Administrative Rules of the Department of Personnel prohibits "discrimination against any person" in any personnel action due to "non-merit factors." N.H. ADMIN. CODE § Per 102.01(f). Further, in cases brought on statutory appeal, we have required the commission to provide basic findings of fact underlying commission decisions in sufficient detail to insure effective judicial review of those decisions. *Foote v. State Personnel Comm'n*, 116 N.H. 145, 148–49, 355 A.2d 412, 414 (1976).

■ The commission is not relieved from the obligation to generate basic findings of fact where the petitioner seeks certiorari review. Without specific findings of fact to review, this court can neither adequately prevent or correct errors and abuses of the commission, *Melton v. Personnel Comm'n*, 119 N.H. at 277, 401 A.2d at 1063, nor determine whether the commission's "findings could have reasonably been made." *N.H.-Vt. Physician Serv. v. Durkin*, 113 N.H. 717, 721, 313 A.2d 416, 419 (1973).

■ Our inquiry is focused on whether the commission's specific findings of fact indicate that the dismissal of the plaintiff was based on her failure to pass the probationary period test stipulated by the department of personnel; *i.e.*, whether the plaintiff's performance met the "required work standard." N.H. ADMIN. CODE § Per 302.23(c).

As the cornerstone of the State merit system of personnel administration, *id.* § Per 102.01(a), the department has created a probationary term of six months, during which new employees of the State classified service are evaluated to determine their fitness to perform the duties of their positions. *Id.* §§ Per 101.27, 302.23(a). During this "work-test" period, the appointing authority enjoys latitude to deny an employee permanent employment if her actual work performance fails to meet required work standards. *Id.* §§ Per 302.23, 101.26.

The plaintiff argues that she satisfactorily completed her proba-

tionary term and was not dismissed for her failure to meet the required work standard. Instead, she contends that her dismissal was based on arbitrary, non-merit factors unrelated to the work standard; that personality alone, and not actual performance, motivated her termination. She concludes that the commission's decision that her termination "was based on valid considerations which are in the record" runs contrary to the commission's specific findings of fact. We agree.

██ The commission's rationale that its decision was based on "valid considerations which are in the record" contravenes this court's well-settled requirement that the commission set forth basic findings of fact so that we may "ascertain whether the conclusions reached by it were proper." *Foote v. State Personnel Comm'n*, 116 N.H. at 148, 355 A.2d at 414. The defendant's argument, that the plaintiff's evidentiary obligation to carry the burden of production at the commission hearing relieves the commission itself from any responsibility to generate basic findings of fact for adequate judicial review, is not persuasive.

██ From our review of the record, we conclude that the plaintiff satisfied her burden of proof. The decision of the commission was arbitrary, as it was not supported by the commission's findings of fact. Indeed, the findings of fact contradict the commission's determination that the plaintiff was dismissed for "valid considerations."

██ The commission's findings of fact do not indicate that the plaintiff failed to meet the required work standard during her probationary period. On the contrary, the findings of fact state that the plaintiff's job performance was "satisfactory" throughout the course of her six-month probation period. The commission further allows that the plaintiff did not miss a day of work in six months with the PUC; that except for a rare lateness due to car trouble, she was never late for work; that she received compliments for the quality and quantity of her work; and that when she finished her assigned duties, the plaintiff looked and volunteered for additional work. Also, her supervisor testified before the commission that the plaintiff's typing was "excellent" and that she transcribed "very satisfactorily."

The defendant maintains that the plaintiff's personality interfered with the conduct of the office. It cites the testimony of the plaintiff's supervisor, Mr. Ellsworth, who testified at length about his reasons for recommending that the plaintiff not be retained for permanent employment. Although he admitted that the plaintiff's technical

skills were quite good, Mr. Ellsworth stated that she was a disruptive force within the PUC. In support of his opinion, Mr. Ellsworth cited complaints from three engineers employed by the PUC concerning the plaintiff's attitude in working with them, the inability of one of the clerical staff to get along with the plaintiff, and the instances of personality conflict involving the plaintiff. When Mr. Ellsworth terminated the plaintiff's employment, he failed to provide her with the reasons for doing so, preferring to avoid "going through the agony of explaining the specific personal problems that I felt were being created."

Nonetheless, Mr. Ellsworth failed to testify about any direct problem that he experienced while working with the plaintiff, or any incident during the six-month probation period of which he had personal knowledge, that reflected poorly on the plaintiff. Indeed, there was no evidence introduced that the plaintiff did not get along well with Mr. Ellsworth. Moreover, the commission's findings of fact contain no reference to a personality dispute between the plaintiff and her supervisor.

 Without questioning whether personality should be a relevant factor in determining whether a probationary employee has met the required work standard, we do conclude that the personality conflicts described by Mr. Ellsworth in his testimony do not rise to the level of the fundamental incompatibility between employer and employee discussed in our opinion in *Appeal of Czeslaw Pawlus*, 121 N.H. at 274, 428 A.2d at 487. In *Pawlus*, the commission and this court upheld the decision of an appointing authority to dismiss a probationary employee due to "an incompatibility" between the employee and his employer. *Id.* Here, there has been no such finding of incompatibility between the plaintiff and her supervisor. The fact that the plaintiff in this case may not have been loved by some of her fellow employees, as the plaintiff asserts, is not the kind of incompatibility that this court envisioned in *Pawlus*.

 The decision of the commission is reversed and remanded to the commission to provide the appropriate remedy which it may deem "just," under the provisions of N.H. ADMIN. CODE § Per 308.04(a). The commission, within its discretion, may reinstate the plaintiff to her former position or transfer her to a similar position, in either instance with back pay and benefits.

*Reversed and remanded.*

SOUTER, J., did not sit; the others concurred.