**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2014-0424, <u>Petition of James P. Connor</u>, the court on April 29, 2015, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. The petitioner, James P. Connor, challenges a decision of the New Hampshire Police Standards and Training Council (Council) suspending his police officer certification pursuant to New Hampshire Administrative Rules, Pol. 402.02(b), which provides:

> A certification shall be temporarily suspended pending resolution of criminal charges if the officer has been arrested, indicted or bound over either prior to or after certification for a felony or any crime involving moral turpitude or of a crime which tends to bring discredit on the police, corrections, or probation/parole service, unless the safety of the public or the confidence in the criminal justice system would not be adversely affected.

<u>N.H. Admin. Rules</u>, Pol 402.02(b). We affirm.

The Council found, or the record establishes, the following facts. The petitioner is a full-time police officer employed by the Hudson Police Department. On October 16, 2013, he was charged by information with two misdemeanor counts of simple assault, <u>see</u> RSA 631:2-a (2007), and one misdemeanor count of criminal mischief, <u>see</u> RSA 634:2 (Supp. 2014), stemming from an incident that allegedly occurred in October 2012. On February 18, 2014, he was indicted by a grand jury for felony second degree assault and felony attempted second degree assault, <u>see</u> RSA 631:2 (Supp. 2013) (amended 2014); RSA 629:1 (2007), stemming from an incident that allegedly occurred in January 2013. All of the charges involved the same alleged victim, the petitioner's former wife. On March 20, 2014, the Council was notified that the petitioner had been placed on administrative leave as a result of the felony indictments. The petitioner was returned to full duty as a detective approximately 10 days after being placed on administrative leave.

In April 2014, the Council required the petitioner to attend a hearing to show cause why, pursuant to Rule 402.02(b), his certification as a police officer should not be temporarily suspended pending resolution of the criminal charges. The Council held the show cause hearing on April 22, 2014.

Although the petitioner attended the hearing, he did not testify. After considering the evidence at the hearing, the Council temporarily suspended the petitioner's certification, pending resolution of the criminal charges.

The petitioner moved for rehearing/reconsideration, arguing that "[t]he majority of the Council failed to properly apply" Rule 402.02(b) and failed to analyze whether, if he were not suspended, "the safety of the public or the confidence in the criminal justice system" would be adversely affected. He further argued that the Council failed to consider whether just cause existed for the Council not to suspend him. See N.H. Admin. Rules, Pol 402.02(e), (f). Thereafter, the Council granted the motion for the limited purpose of reconsidering the evidence presented at the show cause hearing. Upon reconsideration, the Council determined that, if the petitioner were not suspended, public confidence in the criminal justice system would be damaged and that "such damage outweighs any evidence of 'just cause' to not suspend" him.

In May 2014, a jury acquitted the petitioner on the misdemeanor charges. On June 23, 2014, the felony indictments were nolle prossed. On June 24, 2014, the next day, the Council voted to reinstate the petitioner's certification immediately. The instant appeal was filed on June 30, 2014, approximately a week later.

As an initial matter, we address the jurisdictional basis for our review. See Petition of Hoyt, 143 N.H. 533, 533 (1999). Although the petitioner filed what purports to be an appeal pursuant to RSA 541:6 (2007) and Supreme Court Rule 10, for the reasons that follow, we treat his appeal as a petition for a writ of certiorari filed under Supreme Court Rule 11. See id. at 533-34. Appeals from administrative proceedings may be taken under RSA chapter 541 only "[w]hen so authorized by law." RSA 541:2 (2007). We have interpreted the phrase "[w]hen so authorized by law" to mean that "[u]nless some reference is made to chapter 541 in any given statute, an appeal under the provisions of chapter 541 is not authorized by law." Petition of Hoyt, 143 N.H. at 534 (quotations omitted). The statutes governing the Council, RSA 188-F:22-:32-d (2008 & Supp. 2014), provide no such authorization. Accordingly, the petitioner is not entitled to pursue a direct appeal pursuant to RSA chapter 541, and we treat his appeal as a petition for a writ of certiorari. See Petition of Hoyt, 143 N.H. at 534. Because we treat the petitioner's appeal as a petition for a writ of certiorari, we review the Council's decision to determine whether it "acted illegally with respect to jurisdiction, authority or observance of the law, whereby it arrived at a conclusion which could not legally or reasonably be made, or abused its discretion or acted arbitrarily, unreasonably, or capriciously." Id. (quotation and brackets omitted).

We now address the substantive issues before us. The petitioner argues that the Council failed to consider whether, if he were not suspended, either

public safety or confidence in the criminal justice system would be adversely affected. He further asserts that, to the extent that the Council found that, were he not suspended, confidence in the criminal justice system would be adversely affected, its finding is not supported by the record. Finally, he contends that the Council erred when it found no "just cause" not to suspend him.

The record establishes that the Council's determination was the result of consideration of all of the issues before it and was neither arbitrary nor capricious. At the show cause hearing, members of the Council explained that their focus was upon whether, were the Council not to suspend the petitioner, either public safety or confidence in the criminal justice system would be adversely affected. See N.H. Admin. Rules, Pol 402.02(b). When considering those issues, members of the Council examined the number of pending criminal charges and, as one Council member described them, their "very, very serious" nature. See N.H. Admin. Rules, Pol 402.02(c) (listing assault as a crime that involves "moral turpitude" or that tends "to bring discredit on the police").

Council members also considered the impact upon confidence in the criminal justice system should the public discover that the petitioner had been working as a detective on felony cases while under felony indictment himself. As one Council member explained:

> [W]e have to make sure that we continue to keep [confidence] at a high level . . . with the citizens of the state. And, . . . frankly[,] I'm surprised it isn't in the newspapers down there because . . . if I was a citizen of the town of Hudson and I was reading that a detective [who] was investigating my matter . . . was under indictment himself, I'd be questioning the ability of that detective, that officer to be even working.

Another Council member agreed, stating: "I'm mindful of the fact that somehow the county attorneys are right and he's convicted and he's worked on cases. You know, is he that valuable in court himself after a conviction in these cases? Will his credibility be questioned . . . [?]" Another Council member expressed concern that, because the petitioner was still working as a detective, he could, in that capacity, come into contact with the alleged victim of the criminal charges.

Council members also considered the fact that the Hudson Chief of Police supported the petitioner and did not find the criminal charges to be credible. Several Council members expressed concern that the Chief had reached this conclusion without conducting a full investigation himself and without obtaining reports from other law enforcement agencies that had investigated the matter. They weighed the Chief's opinion against the fact that

3

a grand jury had indicted the petitioner on two felonies. As one Council member stated:

> [T]he chief is backing his officer yet he hasn't conducted a full investigation himself. He doesn't know all the details in the criminal investigation . . . . I'd be very concerned if it was one of my officers that I didn't know all the facts in this case and conducted my own internal investigation with my own investigators and knew exactly what was in those reports and with the interviews because, again, the grand jury did indict him and . . . a prosecutor . . . is obligated not to indict . . . if he feels that it's a false allegation or doesn't have enough evidence to bring it forward.

Another Council member agreed, stating that an indictment is "more than an accusation." An indictment, the Council member explained, had been through "the beginnings of our criminal justice system" and demonstrated that a grand jury had "found probable cause to move on with the charges."

Based upon our review of the record submitted on appeal, as described above, we conclude that the Council could legally and reasonably have determined that, if it had not suspended the petitioner, confidence in the criminal justice system would have been adversely affected, and that there was no just cause not to suspend him.

<u>Affirmed</u>.

DALIANIS, C.J., and HICKS, CONBOY, LYNN, and BASSETT, JJ., concurred.

**Eileen Fox,
Clerk**

4